1 | NICK T. RECKAS SBN 67235
2 | Law Office of Nick T. Reckas
  | 336 Bon Air Center, #296
3 | Greenbrae, CA 94904
  | Telephone: (415) 464-0913
4 | Facsimile: (415) 464-9801

5 | Attorneys for Plaintiff
  | SPYROS ECONOMIDES
6

7 | WILLIAM E. ADAMS #153330
  | SHARRON W. GELOBTER #226936
8 | FITZGERALD ABBOTT & BEARDSLEY LLP
  | 1221 Broadway, 21st Floor
9 | Oakland, California 94612
  | Telephone: (510) 451-3300
10 | Facsimile: (510) 451-1527
  | Email: wadams@fablaw.com; sgelobter@fablaw.com
11

12 | Attorneys for Defendant PETER TSAKANIKAS

13

14

15 | UNITED STATES DISTRICT COURT

16 | NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

SPYROS ECONOMIDES,                     ) Case No.: RG07340996
                                       )
            Plaintiff,                 ) **[PROPOSED] JOINT CASE**
                                       ) **MANAGEMENT STATEMENT**
      vs.                              )
                                       ) [Civil Local Rule 16-9]
PETER TSAKANIKAS, and DOES I through   )
XXV,                                   ) Date:        Sept. 19, 2008
                                       ) Time:        1:30 p.m.
            Defendants.                ) Courtroom:   2
                                       ) Judge:       Hon. Jeffrey S. White
                                       )

        Pursuant to the court's Order dated June 30, 2008, the parties to the above-entitled action

hereby submit the following joint Case Management Statement:

        1.    **JURISDICTION AND SERVICE**

        The court has diversity subject matter jurisdiction of the claims by and between the parties

pursuant to    28 USC §1332.  There are no issues regarding personal jurisdiction or venue.

1

2.    **UNDERLYING FACTS**

(A)    Plaintiff's Facts

Plaintiff SPYROS ECONOMIDES ("ECONOMIDES") has sued defendant PETER TSAKANIKAS ("TSAKANIKAS") for fraud, breach of contract and conversion pertaining to a joint investment that Economides and Tsakanikas made in CallKey, Ltd. an Isle of Man Corporation. Callkey, Ltd. is engaged in the telecommunications business and had developed a software based technology capable of providing mobile phone service at considerably lower prices compared to conventional mobile phone companies. Economides claims actual damages of $359,000 based upon his investment losses which are the direct result of Tsakanikas' misconduct.

Commencing in January 2003 Tsakanikas made a number of false statements and promises to Economides in order to induce Economides to invest in Callkey. The investment was structured so that Economides and Tsakanikas formed SEPT, LLC, a Nevada limited liability company, that was 60% owned by Tsakanikas and 40% owned by Economides. Economides and Tsakanikas would put their capital into SEPT which would in turn fund Economides and Tsakanikas' capital contributions to an Arizona subsidiary called Callkey, Inc. to be established by Callkey, Ltd. In exchange for this capital contribution, SEPT would be issued shares in Callkey, Ltd. Callkey, Inc. would provide CallKey, Ltd. a presence in the United States. Tsakanikas, who claimed he was an experienced business executive who had taken other companies public, would be Callkey, Inc.'s CEO.

Tsakanikas false statements to Economides included, *inter alia*:

1.    Tsakanikas would personally invest $1,200,000 in Callkey, Ltd, presumably through SEPT. Economides believes that Tsakanikas never made any capital contributions to SEPT.

2.    On May 19, 2003, Tsakanikas telephoned Economides and told him that Callkey, Ltd. had urgent financial obligations and that if Economides obtained a $150,000 line of credit from his bank secured by a second mortgage on his home to pay these obligations, Tsakanikas would repay the credit line in full within a short period of

2

1    time.  In response, Tsakanikas established a $150,000 line of credit secured by a

2    second deed of trust on his home and completely drew down the credit line and

3    remitted the funds to Tsakanikas.

4       3.     Tsakanikas told Economides that he could contribute ownership of a condominium

5    to SEPT's capital account.  Under the arrangement, Tsakanikas would take title to

6    the property from Economides and within one year Tsakanikas would contribute on

7    Economides' behalf the purchase price to SEPT as a capital contribution.  On

8    October 27, 2003, Economides  purchased a condominium unit in Tucson for

9    $158,000 and financed the purchase with a loan from Wells Fargo Bank in the

10    principal amount of $150,000.  On April 22, 2004, Economides quit claimed the

11    property to Tsakanikas, however Economides remained liable on the bank loan.

12       4.     On November 3, 2003, Tsakanikas telephoned Economides and told him that

13    Callkey, Ltd. again urgently needed money to cover its operating expenses, and if

14    Economides borrowed $45,000 on his MBNA credit card to pay these obligations,

15    Tsakanikas would repay both the credit card company and the $150,000 line of credit

16    within a few days with cash he was due to receive from the sale of stock which he

17    acquired from the merger of his company, Enviro Engineering, with NUI, another

18    environmental company.   In December 2003, Economides  borrowed $45,000

19    against his MBNA credit card and transferred the funds to SEPT.  In fact, there has

20    never been any deal by which Enviro Engineering would be acquired by NUI or any

21    other company, and therefore, Tsakanikas had no means by which he could repay

22    either amount.

23    Economides' total investment in SEPT was approximately $365,000 consisting of the

24    money obtained from the home equity loan, $150,000, the money obtained from the MBNA card,

25    $45,000, and an additional $170,000 in cash.  This amount does not include the value of the Tucson

26    condominium, $158,000 to which SEPT never obtained title.

27

28

3

1    In March or April 2004 the management of Callkey, Ltd. had a full audit conducted of
2    Callkey, Inc.  This audit revealed that of all of the money that Tsakanikas had received from
3    Economides and other investors he only deposited $321,152 into Callkey, Inc.'s bank account and
4    had embezzled the remainder.  Additionally, the management of Callkey, Ltd. learned that
5    Tsakanikas maintained foreign bank accounts and had illegally transferred funds to those accounts
6    apparently to evade payment of United States and Greek taxes.  Based on these findings, Callkey,
7    Ltd. demanded that Tsakanikas resign as CEO of Callkey, Inc. and that SEPT sell all of its Callkey,
8    Ltd. stock back to Callkey, Ltd. in exchange for an unsecured note in the principal amount of
9    $240,000 bearing no interest payable in January 19, 2006.  Economides objected to the stock sale,
10   but agreed to it based upon  Tsakanikas' promise that he would personally repay Economides the
11   $365,000 that he had invested in Callkey, Ltd. through his ownership in SEPT.

12   In November 2005 Tsakanikas and Economides entered into an agreement ("the Repayment
13   Agreement") to resolve Economides' claims against Tsakanikas.  The basic terms of the agreement
14   were:

15   (a)    Tsakanikas would pay Economides a total of $354,000 (after credits for prior
16          payments)  over a four year period ;

17   (b)    Within five calendar days after the sale of a property that Tsakanikas owned in
18          Mexico, called the Santo Tomas property, Tsakanikas would make a payment equal
19          to the lesser of (a) 80% of the net proceeds from such sale or (b) the unpaid amount
20          then due under this agreement

21   (c )   By February 25, 2006 Tsakanikas would have Economides released from all
22          obligations under the Wells Fargo Bank note which was secured by the
23          condominium in Tucson.  If Tsakanikas failed  to obtain Economides' release by this
24          date, he would  immediately put the condominium for sale with a broker of
25          Economides' choosing; and

26   (d)    Tsakanikas would hire a tax accountant to complete and file all outstanding tax
27          returns for SEPT.

28

4

1    Tsakanikas has  breached each one of the terms of the agreement because (a) he did not own

2    the Santo Tomas or any other property in Mexico, (b) he did not secure Economides release from

3    the Wells Fargo loan nor has he placed the condominium on the market or sold it, and (c) he never

4    hired a tax accountant to file SEPT's outstanding returns.

5                    (B)    Defendant's Facts

6        In or about February 2003, Defendant Peter Tsakanikas and Plaintiff Spyros Economides

7    entered into an agreement to form SEPT, LLC to acquire and own shares of stock in CallKey, Ltd,

8    an Isle of Man corporation.  Economides later invested certain monies in the company.  Tsakanikas

9    likewise invested $350,000 in the company which he subsequently lost.

10       In early 2004, Tsakanikas stepped down as CEO of the company.  The CallKey stock that

11   had been acquired by SEPT, LLC was reacquired by CallKey for an unsecured note in the principal

12   amount of $240,000.  The initial settlement amount agreed upon between the parties was $500,000

13   which was renegotiated and later reduced to $240,000.

14       Thereafter, Tsakanikas promised to repay to Economides a certain sum of the amount he had

15   invested in the company.

16       On or about November 14, 2005 the parties entered into a written agreement ("Agreement")

17   that outlined the schedule of payments by which Tsakanikas would repay Economides the agreed

18   upon amount.  The Agreement was intended to set forth new terms by which the parties would

19   resolve the debt and to clarify amounts owed. Paragraph 12 of the Agreement reads in pertinent

20   part:

21              "12.    This Agreement represents the *entire agreement* of the

22              parties and correctly sets forth the rights, duties, and obligations of

23              each of the parties to the others in relation thereto as of its date.  Any

24              prior agreements, promises, negotiations, or representations

25              concerning its subject matter not expressly set forth in this Agreement

26              are of no force or effect. ..." (Emphasis added).

27

28

5

1    The Agreement was signed by both parties.  The Agreement thus operated as a novation and

2    therefore supercedes any prior agreement between the parties and thus invalidates the fraud claim.

3        Economides alleges that the Agreement is valid and that Tsakanikas has breached the

4    contract by failing to remit the funds required pursuant to the schedule outlined in the agreement

5    and to overall abide by the obligations to which he agreed.  Economides further alleges that

6    Tsakanikas has converted the funds that Economides invested in CallKey to his own use.

7        Tsakanikas denies all the above claims and instead asserts that any claims of fraud made by

8    Economides is superceded by subsequent Agreement made between the two parties.  Thus

9    Economides has waived the fraud claims as the Agreement has reduced the claim to a sum certain.

10       3.    **LEGAL ISSUES**

11           (A)    Plaintiff's Statement of Legal Issues

12       1.    Did Tsakanikas make a false representation of an important fact to Economides

13   regarding his investment in CallKey, Ltd.

14

15       2.    Did Tsakanikas know that the representation was false, or did he make the

16   representation recklessly and without regard for its truth?

17       3.    Did Tsakanikas intend that Economides rely on the representation?

18       4.    Did Economides reasonably rely on the representation?

19       5.    Was Economides' reliance on Tsakanikas' representation a substantial factor in

20   causing harm to him?

21       6.    What are Economides' damages?

22

23       7.    Did Tsakanikas make a promise to Economides that was important to Economides

24   regarding his investment in CallKey, Ltd. and/or his entering into the repayment agreement?

25       8.    Did Tsakanikas intend to perform this promise when he made it?

26       9.    Did Tsakanikas intend that Economides rely on this promise?

27       10.   Did Economides reasonably rely on this promise?

28

6

11.     Did Tsakanikas perform the promised act?

12.     Was Economides' reliance on Tsakanikas' promise a substantial factor in causing harm to him?

13.     What are Economides' damages?

14.     Did Tsakanikas conceal or suppress an important fact from Economides regarding his investment in CallKey, Ltd. and/or the terms of the repayment agreement?

15.     Was Tsakanikas under a duty to disclose the fact(s) that were concealed or suppressed from Economides?

16.     Did Tsakanikas intentionally conceal or suppress the facts from Economides with the intent to defraud Economides?

17.     Was Economides unaware of the important fact that was concealed from him and would he have acted as he did if he had known of the concealment?

18.     Did the concealment or suppression of the material fact cause Economides to sustain any damages?

19.     Validity and enforceability of the Repayment Agreement.

20.     If the Agreement is valid and enforceable, whether the parties have performed their respective obligations under the Agreement.

21.     Whether TSAKANIKAS' performance under the Agreement constitutes a breach of the Agreement.

22.     Whether TSAKANIKAS' actions constitute a conversion;

23.     Whether TSAKANIKAS' performance under the Agreement is a proximate cause of ECONOMIDES' damages;

24.     If the Agreement is unenforceable or has been materially breached by ECONOMIDES' own non-performance, should the measure of damages reflect this fact;

7

25.    The proper measure of damages to the respective parties, and determination of the prevailing party on the contract issues.

(B)    Defendant's Statement of Legal Issues

1.    Validity and enforceability of the Agreement;

2.    If the Agreement is valid and enforceable, whether the parties have performed their respective obligations under the Agreement;

3.    Whether Tsakanikas's performance under the Agreement constitutes a breach of the Agreement;

4.    Whether Tsakanikas's actions constitute a conversion;

5.    Whether Tsakanikas's performance under the Agreement is a proximate cause of Economides's damages;

6.    If the Agreement is unenforceable or has been materially breached by Economides's own non-performance, should the measure of damages reflect this fact;

7.    The proper measure of damages to the respective parties, and determination of the prevailing party on the contract issues.

4.    **MOTIONS**

a)    Defendant's counsel have filed a motion to withdraw as counsel of record for the defendant which is scheduled to be heard on December 12, 2008;

b)    Plaintiff intends to file a motion to have judgment entered against Tsakanikas based on his failure to comply with the orders of the court including his failure to make initial disclosures as required by Magistrate Elizabeth D. Laporte's standing order dated July 26, 2005 and defendant's failure to complete mediation by August 25, 2008.

Later, if necessary, plaintiff intends to bring further motions as appropriate including a motion for summary judgment.

5.    **AMENDMENT OF PLEADINGS**

8

The plaintiff does not intend at this time to amend his complaint to add or dismiss any claims.

No amendments to the pleadings are planned by the Defendant.

6.    **EVIDENCE PRESERVATION**

Plaintiff has taken steps to preserve all evidence within his custody, possession and control. The Defendant does not anticipate any issues regarding evidence preservation.

7.    **DISCLOSURES**

(A)    Plaintiff's Disclosures

Economides has fully complied with the initial disclosures required by Fed. R. Civ. P., Rule 26. Tsakanikas has not made any initial disclosures.

On July 15, 2008, plaintiff wrote to the defendant requesting <u>inter</u> <u>alia</u> that defendant provide plaintiff with defendant's initial disclosures pursuant to Federal Rules of Civil Procedure, Rule 26. A true and correct copy of counsel's July 15, 2008 letter is attached hereto as Exhibit "A". When defendant's counsel did not respond to plaintiff's counsel's letter, on August 15, 2008 he wrote to them again and invited them to contact him to discuss, among other things, the defendant's failure to make initial disclosures. A true and correct copy of the August 15, 2008 letter sent to defendant's counsel is attached hereto as Exhibit "B". On August 16, 2008, counsel for defendant wrote to plaintiff's counsel informing him that they no longer represented Tsakanikas and that a substitution would be filed shortly. In their letter, counsel for the defendant did not address the defendant's failure to make initial disclosures or any of the other issues raised in Exs. "A" and "B" by plaintiff's counsel. Please see e-mail dated August 16, 2008 from William Adams to Nick Reckas, a copy of which is attached hereto as Exhibit "C". To date, defendant has not made <u>any</u> disclosures in compliance with the rule and/or this court's standing order of July 26, 2005.

9

(B)    Defendant's Disclosures

Lack of access to defendant who has been unavailable for extended periods has prevented Defendant's counsel from making disclosures. Further, the dismissal of the case resulted in a period where Defendant was uncertain of whether documents needed to be produced and thus did not prepare to do so.

Further, Defendant's counsel was planning to file a motion to withdraw as counsel of record and had not yet secured a date for hearing on that motion when Plaintiff's counsel's above-referenced communications were received. Thus, Defendant's counsel did not respond immediately but did so at a reasonable time after filing the motion to withdraw. Defendant's counsel contrary to Plaintiff's counsel's claims has cooperated with Plaintiff's counsel in vigorously prosecuting its client's case.

8.    **DISCOVERY**

(A)    Plaintiff's Position

Plaintiff has made his initial disclosures as required by Fed. R. Civ. P., Rule 26 and has voluntarily produced to defendant all non-privileged documents in his possession, custody and control that are relevant to the case. The parties had previously agreed to stay discovery pending the completion of mediation which the court had ordered to be completed by August 25, 2008.

On July 15, 2008, plaintiff's counsel wrote to the defendant's attorneys requesting them to propose some dates that were convenient to them and the defendant to mediate the case and to take the defendant's deposition in the event the parties failed to settle the case at mediation. When plaintiffs' counsel did not receive a response to his letter of July 15, 2008, on August 15, 2004 he once again wrote to the defendant's attorneys and requested them to contact him to discuss the preparation of a joint case management statement, scheduling the mediation and if a settlement could not be achieved, the scheduling of defendant's deposition on a mutually convenient date.

10

1  Defendant's attorneys did not respond to any of plaintiff's requests. Instead, they wrote to plaintiff

2  stating that they would substitute out of the case.

3      In brief, although the case has been pending for more than a year, plaintiff has not been able

4  to obtain any discovery from defendant despite the order of the court and plaintiff's informal efforts

5  to obtain defendant's initial disclosures and to schedule his deposition in the event the parties did

6  not reach a settlement at mediation. Apparently, defendant's attorneys cannot agree to a discovery

7  plan because they do not have defendant's cooperation.

8

9      (B)    Defendant's Position

10     Defendant has not been available for several months now due to family obligations in

11 Greece and thus Defendant's attorneys have not been able secure responsive documents from

12 Defendant. Defendant's counsel has cooperated in every way possible with Plaintiff's counsel to

13 move the case along, including returning all telephone calls and cooperating in the production of a

14 joint case management statement.

15

16     Any delay in the prosecution of this case was principally caused by Plaintiff's counsel who

17 due to his failure to abide by the court's orders to register for electronic notification in the case

18 resulted in having his case dismissed. He therefore was required to file a motion in order to have

19 the case reinstated. His failure to diligently prosecute his case resulted in dismissal and substantial

20 delay and is therefore not the fault of Defendant.

21

22     9.    **CLASS ACTIONS**

23     n/a

24     10.   **RELATED CASES**

25     None.

26     11.   **RELIEF**

27

28

11

Economides seeks compensatory damages in the amount of $506,363.23, punitive damages according to proof and reasonable attorney fees as provided in the repayment agreement.

Defendant seeks a determination of the validity of the Agreement at issue in this action and also seeks attorneys' fees.

12. **SETTLEMENT AND ADR**

(A)     Plaintiff's Position

The court ordered the parties to mediation which was to be completed by August 25, 2008. The parties did not complete the mediation by the said date because of defendant's lack of cooperation. As noted, on July 15, 2008, plaintiff's counsel wrote to the attorneys for the defendant to provide one or more dates which were convenient to them and their client to mediate the case and they replied for the first time on August 16, 2008, stating that, "[they] [were] no longer representing Mr. Tsakanikas in this matter." They further stated they did not know who would be representing defendant's interests and they were unable to provide to plaintiff's counsel any contact information. As a result, plaintiff could not schedule or complete the mediation within the deadline imposed by the court.

(B)     Defendant's Position

The court has ordered the parties to mediation, however because of dismissal of the case Defendant suspended preparation for mediation. Upon reinstatement of the case Defendant's counsel was unable to timely secure Defendant's availability for mediation, thus the deadline has passed. Once Defendant has secured alternate counsel the issue of mediation should be revisited.

13. **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Not applicable. On or about March 24, 2008, defendant disqualified Magistrate Laporte who was originally assigned to the case and the case was reassigned to the Honorable Jeffrey S. White for all further proceedings.

14. **OTHER REFERENCES**

12

This case is not suitable for any other references.

15.   **NARROWING OF ISSUES**

(A)   Plaintiff's Position

The issues do not need to be narrowed.

(B) Defendant's Position

As stated above, Defendant believes that the pertinent issues are not that of the fraud claim, but rather the validity of the subsequent Agreement signed between the parties.

16.   **EXPEDITED SCHEDULE**

(A)   Plaintiff's Position

Plaintiff is agreeable to have the case set on an expedited schedule.  However, the case cannot be expedited without defendant's cooperation which has not been forthcoming.

(B) Defendant's Position

Defendant needs to secure new counsel who will make the determination of whether an expedited schedule is advantageous or desirable.

17.   **SCHEDULING**

(A)   Plaintiff's Position

Plaintiff is willing to meet and confer to set the proposed dates for scheduling depositions, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.  However, it appears that defendant does not intend to cooperate with this process and defendant's attorneys have moved to withdraw.

(B) Defendant's Position

Once Defendant has secured alternate counsel the meet and confer process should resume and Defendant will be able to set dates for all processes required.

13

18.    **TRIAL**

      (A)    Plaintiff's Position

Plaintiff requests a jury trial.  The trial will take ten court days.

      (B) Defendant's Position

The Defendant has not requested a jury trial.  However, if a court trial is necessary Defendant estimates the trial should take 1 to 2 days maximum.

19.    **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

There are no non-party entities or persons who have a financial interest in this case or in a party to this proceeding, nor any other interests that could be substantially affected by the outcome of this case.

      Respectfully submitted,

DATED:  Sept. 11, 2008      LAW OFFICES OF NICK T. RECKAS


By: _____
      NICK T. RECKAS,
      ATTORNEY FOR PLAINTIFF
      SPYROS ECONOMIDES

DATED:  Sept. 11, 2008      LAW OFFICES OF FITZGERALD ABBOTT &
      BEARDSLEY LLP


By: _____
      WILLIAM E. ADAMS, ESQ.
      ATTORNEY FOR DEFENDANT
      PETER TSAKANIKAS

14

**PROOF OF SERVICE**

   I declare that:  I work in the County of Marin, California. I am over the age of eighteen years and not a party of the within entitled cause.

   On September 8, 2008, I served the attached:

**[PROPOSED] JOINT CASE MANAGEMENT STATEMENT**

on the parties herein in said cause via the following means:

[  ]  FIRST CLASS MAIL – I placed sealed, postage prepaid envelopes in First Class Mail for delivery in said city, addressed as follows:

[  ]  OVERNIGHT MAIL – (Federal Express) I placed sealed, postage prepaid envelopes in Overnight Mail for delivery in said city, addressed as follows:

[XX] FACSIMILE TRANSMISSION – I delivered them by electronic facsimile transmission to the following individuals:

[XX] E-MAIL – I forwarded them via e-mail to the following individuals:

William E. Adams, Esq.
Fitzgerald Abbott & Beardsley LLP
1221 Broadway, 21st Flr.
Oakland, CA  94612

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 8, 2008, at San Rafael, California.

             _____
             Suzanne Gamlen

15